Botters et al. *v.* Edrington.

———◆◆———

## S. BOTTERS & CO. *v.* A. L. EDRINGTON.

LIEN: ENROLMENT: LEVY.—The lien created by the levy of an execution, can only be defeated by a lien existing anterior to the levy: hence the enrolment of another judgment, made after the levy of an execution, creates no lien superior to that created by the levy.

IN error to the Circuit Court of Holmes county. Hon. E. G. Henry, judge.

The facts sufficiently appear in the opinion of the court.

*J. M. Dyer*, for plaintiff in error.

1. It has been decided by this court, that magistrates' judgments are embraced by the provisions of the " enrolment law." *Brian* v. *Davidson*, 25 Miss. Rep. 213. By the sixth section of that law, (still in force as to magistrates' judgments,) judgments become liens, *"from the time of enrolment."*

2. Neither the judgments of Edrington or Botters & Co., had any liens prior to 10th December, 1853, because they had not been enrolled: the judgments of Botters & Co., having been that day enrolled prior to the sale, operated from that time as a lien, and were of course entitled to the money. Indeed, I conceive that this case has been already virtually decided by the cases of *Rupert* v. *Dantzler*, 12 S. & M. 697; and *Bierne* v. *Mower*, 13 Ib. 427. *Rupert* v. *Dantzler*, was a controversy between two judgment creditors, about the appropriation of money made by sale of property: one was a judgment rendered before the act of 1844, and consequently lost its lien, 24th February, 1846: the other judgment was rendered after the act of 1844 was passed: the levy resulting in the sale that produced the money, was made the 5th February, 1846: the sale took place 2nd March, thereafter. This court decided, that the lien of the older judgment having expired before the sale, and that of the junior judgment continuing, the money must go to the latter.

But the appellee insists, that the *levy* of Edrington's executions created a lien in their favor, and that being prior to the enrolment of Botters & Co's judgments, therefore Edrington's are to be preferred. Some cases have decided, that a levy does confer a right of that sort in addition to the general lien, but no case has been found in which the lien created by the levy has been held superior to the general judgment lien. If Botters & Co's judgments had not been enrolled at the time of sale, the levy of Edrington's executions, might have been sufficient to have given them priority; and that is the extent of *Heizer* v. *Fisher*, 13 S. & M. In the case just cited, neither judgment had *a lien ;* and in the absence of such lien, the court awarded the money to the execution

first levied; and the opinion then delivered, clearly shows, that if any *general lien* had existed at the time of sale, the money would have been applied to the execution having such lien.

No counsel appeared for defendant in error.

FISHER, J., delivered the opinion of the court.

This was a motion in the Circuit Court of Holmes county, by a constable who had collected money on certain executions, in favor of the defendant in error, asking instructions as to the appropriation of said money.

The facts are these: Edrington, in the year 1843, recovered judgments before a justice of the peace of Holmes county, against one Covington, which were never enrolled. Sometime prior to the 10th of December, 1853, executions issued on these judgments were levied by the constable on two bales of cotton, the property of the debtor, which were sold on the day last above named.

Botters & Co., in 1847 and in 1850, recovered judgment before a justice of the peace against Covington, and had the same duly enrolled on the day of the constable's sale; but before the same was made, Botters & Co., notifying the constable of this fact, and claiming the proceeds of the sale, the constable submitted the matter to the decision of the court, when judgment was rendered in favor of Edrington.

This proceeding is based upon the ninth section of the statute of 1844, (Hutch. Code, 892,) regulating judgment liens. The language of the section is as follows: "After a sale of any property by the sheriff or coroner on execution, before the money is paid over by him, he shall examine the '*judgment roll*,' to ascertain if there be any elder judgment decree, or forthcoming bond forfeited therein enrolled against the defendant in said execution, *having priority of lien*," &c. At the date of the levy by the constable, the judgments of neither party operated as liens upon the defendants' property; and it was then a race of diligence between the parties. The one who could by his superior diligence have his execution levied, would be entitled to be first satisfied, for the obvious reason that he was not then interfering with a prior lien,

or prior right of the other. The levy itself created not only a lien upon the property, but a special property in the officer; and this lien could only be defeated by another lien, which was then superior to the one created by the levy. When, therefore, the statute declares that the money shall be applied to the judgment having priority of lien, it means the judgment having such priority at the date of the seizure of the property by the officer. Neither judgment at that time operating as a lien upon the property, the rights of the parties must be determined by the rule of the common law,—or if according to any statute, it must be according to that which makes the delivery of the execution to the officer, a lien upon the debtor's estate.

Judgment affirmed.